IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAKENYA R. BOLDEN,

    Plaintiff,                           No. CIV S-08-1481 GEB EFB

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,       FINDINGS AND RECOMMENDATIONS

    Defendant.
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons that follow, the court recommends that plaintiff's motion for summary judgment be denied and that the Commissioner's cross motion for summary judgment be granted.

BACKGROUND

       Plaintiff, born January 8, 1970, alleged she was unable to work due to depression, back and leg pain, migraine headaches, seizures, bulimia and other related symptoms. Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 2-5; Administrative Record ("AR") at 39. Plaintiff applied in September 2000 for SSI, but the claim was denied. AR 21. She reapplied for SSI in March 2002, but that claim was denied initially and upon reconsideration. *Id*. Plaintiff requested a hearing and on June 27, 2003, ALJ William C. Thompson Jr. affirmed the denial of SSI benefits.

1

*Id.* On November 18, 2005, the Appeals Council remanded the case and a supplemental hearing was held before ALJ Thompson on August 1, 2006. *Id.* In a decision dated October 27, 2006, the ALJ denied the claim, making the following findings:[1]

> 1. The claimant has never performed substantial gainful activity.
>
> 2. The medical evidence establishes that the claimant has severe peripheral neuropathy, obesity, dysthymia, and a seizure disorder, but that she does not have an impairment, or combination of impairments, listed or equivalent in medical severity to one listed in. Appendix 1, Subpart P, Regulations No. 4.
>
> 3. The allegations of the claimant and her family are not credible.
>
> 4. The claimant has the residual functional capacity to perform the physical exertion and nonexertional

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

|   |   |   |
|---|---|---|
|   |   | requirements of work, except: she can lift and carry up to twenty pounds occasionally and ten pounds frequently; she can stand/walk up to six hours in an eight-hour workday; she cannot climb ladders or scaffolding, but can climb stairs; she must avoid heights and hazardous moving machinery; she can perform only tasks requiring simple instructions (20 CFR 416.945). |
|   | 5. | The claimant has no past relevant work. |
|   | 6. | The claimant's residual functional capacity for the full range of light work is reduced by the following limitations: she cannot climb ladders or scaffolding, but can climb stairs; she must avoid heights and hazardous moving machinery; she can perform only tasks requiring simple instructions. |
|   | 7. | The claimant is 36 years old, which is defined in the regulations as a "younger individual" (20 CFR 416.963). |
|   | 8. | The claimant has a G.E.D., which is equivalent to a 12th grade education (20 CFR 416.964). |
|   | 9. | If the claimant had the residual functional capacity to perform the full range of light work, given her age, education, and work experience, section 416.969 of Regulations No. 16 and Rule 202.20, Table No.2, Appendix 2, Subpart P, Regulation No.4, would direct a finding that claimant is not disabled. |
|   | 10. | Although the claimant's additional nonexertional limitations do not allow her to perform the full range of light work, using the above cited rule(s) as a framework for decisionmaking, there is a significant number of jobs in the national economy that she can perform. Examples of such jobs are: mail room clerk, with 7,800 jobs in California; hotel maid, with 55,000 jobs in California |
|   | 11. | The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)). |

AR 34.

## ISSUES PRESENTED

Plaintiff has raised the following issues:

1. The ALJ erred in failing to reconcile the differences between the state agency medical expert's opinion and the Commissioner's own mental health residual functional capacity

3

("RFC") assessment and failed to adequately explain his reasons for not crediting the opinions of Dr. Chang, Dr. Carey and Dr. Kalman.

    2. The ALJ erred in failing to find that plaintiff's bulimia is a severe mental impairment, even though it manifests itself through her physical condition.

    3. The ALJ failed to articulate specific and legitimate reasons for discrediting Dr. Tanson's opinion.

Pl.'s Mot. at 1.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

    I. <u>ALJ's treatment of doctors' opinions</u>

Plaintiff contends that the ALJ erred in failing to reconcile the differences between various expert opinions regarding plaintiff's mental heath RFC and failed to provide sufficient reasons for not crediting the mental health opinions of several doctors.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

4

those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, as amended April 9, 1996). As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. *See Lester*, 81 F.3d at 830; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[2] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

////

---

[2] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

5

An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference.[3] *See id.*; *see also* SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. *Id.* at 830-31. "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." *See Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984)).

Discussion

Plaintiff challenges the ALJ's findings related to plaintiff's mental health status with respect to her RFC and the ALJ's failure to fully credit the examining opinions of Dr. Chang, Dr. Carey and Dr. Kalman.

---

[3] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)(6), 416.927(d)(2)-(6).

6

Plaintiff points to a January 2000, mental RFC assessment where a DDS physician noted that plaintiff was moderately limited in several categories relating to concentration, social interaction and adaptation. AR 197-98. Plaintiff argues that the ALJ did not address this assessment and failed to reconcile it with other medical opinions. Pl.'s Mot. at 10.

While the ALJ did not mention this one assessment, he described in detail plaintiff's mental health history and the lack of treatment. While the assessment is merely a form with boxes to be checked, the ALJ discussed the opinions of several doctors and psychiatrists who spoke in detail with plaintiff. Most importantly, the ALJ addressed plaintiff's concerns and the concerns expressed in the January 2000, RFC assessment. In determining the RFC, the ALJ stated that in addition to several physical limitations, plaintiff can only perform tasks requiring simple instructions. AR 34. The ALJ also noted that while plaintiff was examined by several mental health professionals over the years, there is no indication that she ever received regular treatment for an extended period of time. *Id*. at 29.[4]

Despite plaintiff's assertions, the ALJ did properly discuss the opinions of Dr. Chang, Dr. Carey and Dr. Kalman and did explain his reasons for not fully crediting their reports and cited to substantial evidence in the record. Plaintiff was examined by Dr. Chang, M.D., on December 14, 2000. AR 23. Dr. Chang observed that plaintiff had a moderately restricted and dysphoric affect. *Id*. 23-24. Dr. Chang assigned a GAF of 60 and diagnosed a depressive disorder and stated that plaintiff "would not be able to perform on a consistent and productive basis. The [plaintiff's] decreased persistence and effort made it evident that she would require special supervision." *Id*. at 24. Despite these observations, the doctor stated that plaintiff would be able to significantly improve her functioning within twelve months if she received appropriate treatment. *Id*. The necessary treatment was not described. As a result, the ALJ gave little weight to this assessment. *Id*. Nor is there any indication that plaintiff ever received the

---

[4] Plaintiff was prescribed antidepressants by her a treating doctor at certain times and received counseling due to bulimia. AR 23, 26.

7

1  appropriate treatment.

2  The ALJ also noted that while plaintiff complained of auditory hallucinations to Dr.
3  Chang, plaintiff never made such statements to any of the other doctors or even her treating
4  physician. AR 29. The ALJ concluded that plaintiff's claims were not credible and emphasized
5  that her treating physician did not recommend regular treatment by a mental health professional.
6  *Id*.

7  Plaintiff was examined by Dr. Carey in April 2003. AR 344. Dr. Carey concluded that
8  plaintiff was only mildly limited in her ability to complete a normal work day, accept
9  instructions from a supervisor and respond appropriately to changes in the work place. *Id*. 349.
10 Plaintiff was examined by Dr. Kalman in May 2006, who found that plaintiff had moderate
11 limitations and her condition was unlikely to improve in the next twelve months *Id*. 31, 578.
12 However, the ALJ specifically noted that neither Dr. Carey or Dr. Kalman recommended a
13 course of treatment and more importantly did not seem to consider the effect that treatment by a
14 mental health professional could have on plaintiff. *Id*. 32. Due to the doctors' failure to consider
15 the effect of mental health treatment for plaintiff, with alleged mental health problems, the ALJ
16 gave little weight to the doctors' opinions. *Id*. 34.

17 Essentially, the ALJ was presented with a plaintiff who had never received regular
18 mental health treatment but alleged a severe mental health disability. In 2000, Dr. Chang stated
19 that plaintiff could significantly improve her functioning with proper treatment and the other
20 doctors did not even consider how regular mental health treatment could aid plaintiff. Despite
21 the lack of regular treatment the ALJ still considered plaintiff's mental health in the RFC.

22 The ALJ properly considered all the evidence in making his determination and there is
23 substantial evidence in the record to support the findings. In this case, there was no mental
24 health treating physician to provide information regarding plaintiff's mental health issues. While
25 Dr. Tanson, a general practitioner who treated plaintiff from approximately April 2003 to April
26 2004, prescribed antidepressant medication, there is no evidence of any other treatment rather

8

than writing the prescriptions.

As discussed above, the ALJ provided specific and legitimate reasons for discounting certain conclusions of the examining doctors. The ALJ also cited to Dr. Carey's findings that plaintiff's prognosis was guarded due to multiple chronic stressors. AR 32, 349. It appears that many of these stressors involve plaintiff being a single parent raising eight children. As stated by the ALJ, while raising several children as a single parent is a difficult life circumstance, it does not constitute a disability. *Id*. 29, 32.

The ALJ also relied in part on the report from Dr. Bates, a psychiatrist, who examined plaintiff on November 24, 2002. Dr. Bates noted that plaintiff's mood was euthymic and her affect congruent. *Id*. 25. Dr. Bates diagnosed no acute mental disorder and assigned a GAF of 70 to 75. *Id*.

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for a doctor's report based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding the treating physician's opinion. *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In the instant case, the ALJ properly discussed the conflicting medical evidence and lack of regular medical treatment to support the decision. Therefore, summary judgment should be granted for the Commissioner on this claim.

II. <u>Whether the ALJ erred in failing to find bulimia to be a severe impairment</u>

Plaintiff next argues that the ALJ erred in failing to find plaintiff's bulimia to be a severe mental impairment even though it manifests itself through her physical condition. Pl.'s Mot. at 14.

9

Plaintiff has the burden of proving that she has a severe impairment at step two of the sequential evaluation process. An impairment is severe if it significantly limits one's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "non-severe" if it does not significantly limit one's physical or mental ability to do basic work activities. 20 C.F.R. § § 404.1521(a), 416.921(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) the use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § § 404.1521(b), 416.921(b).

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." *Bowen v. Yuckert*, 482 U.S. 137 (1987). The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Id*. "The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). At this step, the ALJ may decline to find a severe impairment "*only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

Discussion

Plaintiff argues that the ALJ should have found her bulimia to be a severe impairment, as plaintiff developed hypokalemia, peripheral neuropathy and hypoproteinuria as a result. Pl.'s Mot. at 14. Plaintiff also argues that her foot and leg pain were connected to the bulimia and should support the finding of a severe impairment. *Id*. at 14-15. The ALJ noted there is no

10

listing for peripheral neuropathy caused by hypokalemia as a result of bulimia. AR 23. Ultimately, the ALJ did not find that the bulimia was an impairment severe enough to warrant a disability finding.

The ALJ stated that on March 18, 2005, plaintiff was admitted to St. Joseph's Medical Center for treatment of recurring hypokalemia, generalized weakness, bilateral peripheral neuropathy and significant weight loss. AR 26. After extensive tests, all findings were negative, so plaintiff was to be transferred to University of California San Francisco. *Id*. Before plaintiff was transferred, her family contacted doctors and informed them that plaintiff had a chronic history of bulimia. *Id*. This was the first time doctors were informed that plaintiff suffered from bulimia. The transfer was cancelled and plaintiff was treated on an out-patient basis. *Id*.

Plaintiff received counseling and other treatment during this time. AR 26. On June 10, 2005, doctors stated that pain and function had improved significantly. *Id*. On August 24, 2005, plaintiff still had bilateral ankle pain, swelling and persistent numbness, but no more severe leg pain. *Id*. Following her discharge, plaintiff stopped receiving counseling. *Id*.

On November 30, 2005, a physical therapy evaluation was performed. *Id*. By December 22, 2005, plaintiff was able to walk short distances with a cane and hip and knee extension strength had improved. *Id*. As a result, additional physical therapy sessions were requested. Plaintiff attended two sessions but missed five of the sessions and was then discharged from treatment on February 17, 2006. *Id*.

Plaintiff's argument is hard to discern. First, plaintiff argues that the ALJ erred by not finding the bulimia to be a severe impairment. However, there is very little medical evidence related to the bulimia in the record. Other than medical records in 2005, plaintiff's motion points to hardly any other medical evidence discussing bulimia. Instead, plaintiff states that there is no indication that the bulimia had been cured. Pl.'s Mot. at 15. Plaintiff has the burden of proving that she has a severe impairment at step two of the sequential evaluation process. An impairment is severe if it significantly limits one's ability to perform basic work activities. 20 C.F.R. §§

404.1520(c), 416.920(c).

Merely stating that an ailment has not been cured, without supporting medical evidence will not suffice. Plaintiff has failed to demonstrate that the bulimia was a severe impairment.

Plaintiff's attempt to link various physical ailments to the bulimia is also flawed. Plaintiff alleges that hypokalemia, peripheral neuropathy and hypoproteinuria along with foot and leg pain are all intricately intertwined with bulimia and are a severe impairment.[5] In addition to the lack of medical evidence in the record that hypokalemia, peripheral neuropathy and hypoproteinuria constitute a severe impairment in this case, plaintiff repeatedly failed to follow through with treatment. Plaintiff did not continue with counseling and failed to attend physical therapy sessions.[6]

Thus, the ALJ properly relied on the fact that plaintiff had been noncompliant with recommended treatment for bulimia as a basis for not finding a severe impairment. *See* 20 CFR § 416.930. *Flaten v. Sec. of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995) ("ALJ could draw an inference for the general lack of medical care for [impairment]"). Furthermore, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ correctly found that the bulimia did not constitute a severe impairment and summary judgment should be granted for the Commissioner

III. <u>Whether the ALJ erred in discrediting Dr. Tanson's opinion</u>

Plaintiff alleges that the ALJ did not articulate specific and legitimate reasons for discrediting Dr. Tanson's opinion. Plaintiff was treated by two different Dr. Tansons, but plaintiff does not specify which Dr. Tanson she is referring to in her motion. Plaintiff also concedes that it is unclear how long Dr. Tanson treated her, though a report was written in 2003.

---

[5] The ALJ also noted that plaintiff is 5'5" and weighs more than two hundred pounds and there is no listing for obesity. AR 648.

[6] Plaintiff also failed to follow up with physical therapy in 2001. AR 24.

Pl.'s Mot. at 17. Based on plaintiff citing a report written in 2003, the court concludes that plaintiff is referring to Dr. Elvis Tanson who treated plaintiff in that time period.

Plaintiff's claim lacks merit as the ALJ did articulate specific reasons for not crediting Dr. Tanson's opinion. Dr. Tanson filled out a Residual Functional Capacity questionnaire in July 2003. AR 588-96. The majority of questions, specifically those involving plaintiff's ability to stand and walk, involved plaintiff self-reporting. *Id*. Plaintiff reported that she could walk one city block before needing rest and could only sit for one hour or stand for ten minutes before needing to change positions. *Id*. 591. Plaintiff also indicated she could rarely lift ten pounds and never lift twenty pounds. *Id*. 592. Dr. Tansnon's report reflected plaintiff's answers.

It is well established that an "ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ noted that in January 2001, plaintiff told a doctor she was able to drive a car. AR 30. In February 2002, Dr. Tanson reported that plaintiff had a hard time caring for her children because she was unable to drive a car. At the supplemental hearing before the ALJ, in August 2006, plaintiff stated she was able to drive a car and that her physician has placed no restrictions on her driving. *Id*. 30, 655.[7] This issue was pertinent as it related to plaintiff's statements that she would repeatedly loose consciousness and the credibility of her statements in general.

In giving little weight to Dr. Tanson's assessment, the ALJ described how Dr. Tanson stated plaintiff was depressed which affected her condition, but he did not refer her to a mental health professional. AR 31. The ALJ also noted that plaintiff did not follow Dr. Tanson's directions and failed to take iron supplements for five months nor did plaintiff inform Dr. Tanson of her bulimia for several years. *Id*. Thus, Dr. Tanson did not possess all the vital facts when he made his assessment. While plaintiff attempts to downplay the importance of taking iron

---

[7] Plaintiff stated she only drove for emergencies such as picking up her kids at school if they were sick or picking up prescriptions. AR 655.

supplements, the court is not in a position to decide which of a doctor's orders should be followed.

While Dr. Tanson's assessment of plaintiff's ability to walk, stand and carry heavy objects demonstrated the possibility of a severe disability, the ALJ specifically noted that on many occasions in 2001 and 2005/2006, plaintiff failed to attend physical therapy sessions and was discharged. AR 24, 26. The ALJ properly concluded that plaintiff was not credible in the description of the severity of her symptoms as she was not following the prescribed treatment. *Id.* 30. Plaintiff's own statements contradict her other statements as she commented that she cares for her children and lifts her children who weigh twenty pounds. *Id*. 28. On other occasions plaintiff stated she could not lift more than a gallon of milk. *Id*.

While plaintiff contends that Dr. Tanson's assessment should be given great weight, Dr. Tanson concluded that plaintiff is capable of working in a low stress job. AR 590. The ALJ essentially came to a similar conclusion noting that plaintiff had moderate deficiencies in concentration, persistence and pace and could only perform task requiring simple instructions. *Id*. 33-34.

Thus, the ALJ's findings were supported by the record and the ALJ provided sufficient specific and legitimate reasons for not fully crediting Dr. Tanson's opinion.

Accordingly, it is hereby RECOMMENDED that:

1. Plaintiff's motion for summary judgment be denied;

2. The Commissioner's cross-motion for summary judgment be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

14

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*
2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: February 9, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE